## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KEVIN E. HOWARD**                                        **CIVIL ACTION**

**VERSUS**                                                        **NO.  13-5043**

**DARLENE BURNS**                                          **SECTION "H"(5)**

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).  For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

I. *Procedural history*

By previous Report and Recommendation, the undersigned Magistrate Judge recommended that Kevin Howard's federal *habeas corpus* petition be dismissed without prejudice, as a mixed petition, for failure to exhaust all of his claims in the state courts. (Rec. Doc. 16)  An order was entered initially approving that recommendation, but was ultimately vacated upon Howard's belated objection (Rec. Doc. 24) and submission of an amended petition by which he sought to withdraw his unexhausted claims and assert only exhausted

claims.[1]  (Rec. Docs. 19, 20).  By subsequent order, the District Judge referred the amended

petition with the sole remaining exhausted claims to the undersigned for further

consideration.  (Rec. Doc. 25).  Upon additional briefing from the State, the matter is before the

Court for review.  (Rec. Doc. 27).

　　　　Howard is a convicted inmate currently incarcerated in the Vernon Correctional Center

in Leesville, Louisiana.  On September 26, 2007, he was charged by bill of information with one

count of possession with intent to distribute heroin and one count of possession of cocaine.[2]

On June 24, 2009, he was found guilty as charged following a one-day bench trial.[3]  On July 6,

2009, he was sentenced to 15 years imprisonment at hard labor on each count, to be served

concurrently.[4]  The court also imposed a $50,000 fine as to count two.

　　　　On direct appeal, he asserted a single assignment of error that he was denied effective

assistance of counsel.  The Louisiana Fifth Circuit Court of Appeal conditionally affirmed his

---

[1] In his objection, Howard asserted that he followed the magistrate judge's directives
and amended his *habeas* petition to withdraw his unexhausted claims and proceed with only
exhausted claims.  Presumably, he had intended his form petition captioned under 28 U.S.C.
§ 2241 (submitted within the objection period, but docketed separately as an independent
case) to serve as an amended petition.  That matter was subsequently closed and a copy of the
petition was ordered to be filed into the record in this case.

[2] State Rec., Vol. 1 of 5, Bill of Information.

[3] State Rec., Vol. 1 of 5, Minute Entry for June 24, 2009.

[4] State Rec., Vol. 1 of 5, Minute Entry for July 6, 2009.

convictions and sentences on May 25, 2010.[5]  In reviewing the record for patent error, the court of appeal questioned the validity of the waiver of his right to a jury trial, and remanded the matter to the trial court for an evidentiary hearing on both the waiver issue and the claim of ineffective assistance of counsel.  Howard's request for a rehearing was refused.

Howard was appointed new counsel for purposes of the evidentiary hearing, which was held on July 16, 2010.[6]  Based on the evidence submitted, the trial court ruled that Howard knowingly and voluntarily waived his right to a jury trial, and that he was not denied effective assistance of counsel at trial.[7]  Howard lodged his second direct appeal.

In this appeal, Howard raised three assigned errors:  two counseled assignments of error that alleged invalidity of the jury trial waiver and ineffective assistance of trial counsel for entering numerous stipulations with respect to evidence, and one additional *pro se* assignment of error broadly alleging violations of his constitutional rights resulting from nondisclosure by the State of the identity of the confidential informant who supplied information used to obtain a search warrant.  On May 24, 2011, the Louisiana Fifth Circuit

---

[5] *State v. Howard*, 09-KA-928, (La. App. 5th Cir. 5/25/10), 37 So.3d 1099, *reh'g denied* (June 23, 2010); State Rec., Vol. 4 of 5. The court of appeal also noted that his sentences were illegally lenient, but that only the sentence on count two required corrective action. The court of appeal deferred consideration of the ineffective assistance claim, noting the opportunity for development of a complete record on the issue and reserving Howard's right to appeal from an adverse decision.  *Id*. at 1107.

[6] State Rec., Vol. 4 of 5, Transcript of evidentiary hearing held July 16, 2010.

[7] *Id*. at 54-56.

affirmed Howard's convictions and sentences.[8]  No rehearing was requested.  Howard's related writ application to the Louisiana Supreme Court was denied without stated reasons on April 9, 2012.[9]

On March 26, 2013, Howard filed his federal application for *habeas corpus* relief.[10]  For the reasons detailed at the outset, only four exhausted claims for relief raised in his amended federal *habeas* petition are presently before the Court:

(1)     The trial court erred in failing to ascertain that petitioner knowingly and voluntarily waived his right to a jury trial;

(2)     At the pretrial stage, petitioner was denied critical information needed to prepare an adequate defense, namely information related to the

---

[8] *State v. Howard*, 10-869 (La. App. 5th Cir. 5/24/11), 66 So.3d 1160; State Rec., Vol. 1 of 5.  The court of appeal noted that the trial court had, as previously ordered, resentenced petitioner on remand; however, the court of appeal found that the restriction on parole eligibility was improper, and amended the sentence on count one accordingly.  The court of appeal remanded, directing the trial court to correct the commitment order to reflect the amended sentence and generally to fix noted inconsistencies between the commitment order and the transcript.

[9] *State ex rel. Howard v. State*, 2011-KH-1468 (La. 4/9/12), 85 So.3d 135; State Rec., Vol. 5 of 5.

[10] Rec. Doc. No. 1, Petition. "A prisoner's *habeas* application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  While the petition itself is not dated, petitioner's pauper application is signed and notarized March 26, 2013, which is presumed to be the earliest date of record on which it could have been delivered to prison authorities for mailing. Rec. Doc. No. 2.

confidential informant, thereby denying him the right to confront

witnesses against him;

(3)     The search and seizure was unlawful and not supported by probable

cause; and

(4)     He was denied effective assistance of counsel due to counsel's omissions

and stipulations during trial that effectively prevented him from

asserting a successful defense.[11]

The State filed an answer and memorandum in response to the amended petition

arguing that the claims are without merit.

II. *Facts*

The Louisiana Fifth Circuit on direct appeal summarized the relevant facts determined

at trial as follows:

> Detective Jason Monnerjahn of the Jefferson Parish Sheriff's Office instituted a
> narcotics investigation at 233 Helen Street, Apartment C that involved Howard.
> Detective Monnerjahn applied for and was issued a search warrant for the
> residence on August 2, 2007. He testified that his warrant application was based
> on a controlled undercover transaction wherein a first-time confidential
> informant purchased narcotics from a man at the Helen Street residence. Officer
> Monnerjahn testified that, at the time of the transaction, Officer Derek Magee
> surveilled the residence and Officer Elvin Modica kept an eye on the informant.
> Officer Monnerjahn showed a photograph of Howard to the informant, and the
> informant identified Howard as the man from whom he had bought the
> narcotics.

---

[11] Rec. Doc. Nos. 19, 20.

Detective Monnerjahn testified that, on August 3, 2007, he and several other officers went to 233 Helen Street, Apartment C, to execute the search warrant. Detective Monnerjahn knocked on the front door and announced a police presence. When he received no response, he entered the apartment through the unlocked door. Wondra Howard, Derrick Howard, and Edward Veal were discovered on the second floor. The officers detained them and brought them to the first floor. Mr. Veal resisted, and the officers "OC sprayed" him to subdue him. Detective Monnerjahn spoke with Ms. Howard, who told him Howard was her brother and that he lived at her apartment at times, staying in the back bedroom on the second floor. Detective Monnerjahn asked Edward Veal and Derrick Howard whether they knew of any illegal narcotics on the premises, and they said they did not. Detective Monnerjahn testified that Detective Sean Cursain of the K–9 Division was summoned to the scene with his drug detecting dog, Rex.

Detective Cursain, an expert in K–9 training and handling, testified that he led Rex through the Helen Street apartment. The dog showed a response to narcotics odor in three areas of the residence: (1) the clothes closet and (2) a chest of drawers in Howard's upstairs bedroom, and (3) a briefcase in a common living area of the apartment. Detective Monnerjahn testified that, in the upper part of the bedroom closet, he located a Cole–Haan brand shoe box containing $254 in currency, a scale, a bag of rice, powder cocaine, crack cocaine, and heroin. Men's clothing belonging to Howard was found in the chest of drawers.

Detective Cursain testified that he searched the briefcase and found an Entergy bill in the name of Wondra Howard; a Southern University student identification card in Kevin Howard's name; and a business card, bearing a Jefferson Parish seal and Howard's name, along with the title "adult drug court social service counselor." Detective Cursain stated there were no narcotics in the briefcase. Detective Monnerjahn testified that Howard was not at the apartment when the search was conducted. Detective Modica telephoned Howard after obtaining his contact information from Ms. Howard, and Howard arrived at the residence a short time later. According to Detective Monnerjahn, Howard had a key to the Helen Street apartment.

Detective Monnerjahn advised Howard of his *Miranda* rights. It was stipulated at trial that he understood his rights, and he knowingly waived them. Detective Monnerjahn testified that he and Agent Cursain conducted a tape recorded

6

interview with Howard in the upstairs bedroom. The recording was transcribed, and the transcript was admitted into evidence at trial.

The officers asked Howard where he lived, and he responded that he lived at 233 Helen Street with his sister and her two sons, ages seven and thirteen. He said he kept his drugs in the apartment in a Cole–Haan shoebox in the rear upstairs bedroom, stating there were two ounces of powder cocaine, twelve grams of crack cocaine, and one-half gram of heroin in the box. Howard told the officers he sells drugs for money, and Ms. Howard and the others in the apartment that day did not know about the narcotics. He said some of his customers contacted him on his cellular telephone, while he sold to others on the street.

The parties stipulated at trial that, if Charles Krone were called as a witness, he would be accepted as an expert in the identification and analysis of narcotics, and he would testify consistently with his laboratory report, State's Exhibit 1. The parties specifically stipulated that the cocaine seized in this case weighed between twenty and two hundred grams. The laboratory report shows that specimen number three (State's Exhibit 2), measuring a net weight of 59.64 grams, tested positive for cocaine; specimen number four (State's Exhibit 3), with a gross weight of .99 grams, also tested positive for cocaine; and specimen number five (State's Exhibit 4), with a net weight of approximately 10 grams, was found to contain "cocaine base." The report further shows that specimen number 6 (State's Exhibit 5), with a gross weight of .39 grams, tested positive for heroin.

Howard's mother, Joyce Howard, testified for the defense at trial. She stated that she lives in Houston, Texas, but that she traveled to New Orleans for a friend's funeral on the weekend of August 3, 2007. Howard picked her up from the Greyhound Bus Terminal in New Orleans at 8:30 that morning and brought her to her daughter's home. He had traveled from his home in Baton Rouge to attend the funeral.

Howard testified at trial that he lived in Baton Rouge in August 2007. He was working as an intern at a drug detoxification center as part of a master's program in public administration at Southern University. He testified that he used drugs at one time but that he has been in recovery for thirteen years. He did not sell narcotics.

7

Howard testified that his sister, Wondra Howard, lives at 233 Helen Street, Apartment C. He visits with her from time to time and, when he stays at her residence, he sleeps in her children's bedroom. He does not have a designated room at his sister's apartment. According to Howard, he left his house in Baton Rouge on August 2, 2007, and went to his sister's apartment. He slept there that night, and the next morning he picked up his mother at the bus station. On the afternoon of August 3, 2007, he was with his mother and stepfather when he received a telephone call from a police officer who told him to return to the Helen Street apartment.

When he arrived at the apartment, officers were there with a K–9 dog. A shoebox and drugs were sitting on a table. Officers searched him and found nothing except $14. Howard testified that the officers told him someone had to claim ownership of the narcotics. Howard said he would take responsibility for the drugs. The officers told him he would have to submit to an interview before they would release the others in the house from custody. Howard testified that he agreed to make a statement, and he said what the police officers instructed him to say.

Howard testified at trial that the drugs recovered from the shoebox did not belong to him and that he did not sell narcotics out of 233 Helen Street, Apartment C. He claimed responsibility for the narcotics to protect his sister, since she was on probation at the time, and she was under investigation by child protective services. At that time, she was using drugs. Howard stated he had no keys in his possession when he arrived at the apartment during the police investigation and did not know how the officers obtained the apartment key that was admitted into evidence. The $240 found in the shoebox belonged to his sister, but the investigating officers gave it to him. Howard explained that the clothing seized at the apartment belonged to him and that he had brought it with him from Baton Rouge so that he could change after the funeral. Howard testified that his sister's associates, Carlos Lawrence and Edward Veal, had access to her apartment. Veal was a drug user. Lawrence, who is now deceased, was a known drug dealer in the area.

On cross-examination, Howard admitted he had a 1996 conviction for possession with intent to distribute cocaine and convictions for possession of

cocaine in 1991, 1992, and 1993.[12]

III.  *General Standards of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal *habeas* court's role in reviewing state prisoner applications in order to prevent federal *habeas* 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must

---

[12] *State v. Howard*, 09-928 (La. App. 5th Cir. 5/25/10), 37 So.3d 1099, 1101-04.

defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell*, 535 U.S. at 694.

A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not

simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA." *Harrington v. Richter*, 562 U.S. 86 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. at 102; emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

IV. *Claims for Relief*

    A. *Jury trial waiver*

Howard claims that his constitutional rights were violated because the trial court wrongly presumed that he had been fully advised of his right to a jury trial by counsel and failed to engage in any colloquy with him regarding the rights associated with a trial by jury in order to determine that his waiver was knowing and intelligent. As a result, he claims he lacked a thorough understanding of the difference between a bench trial and a standard jury trial and the dangers of choosing a bench trial. Because he was not so cautioned, he contends his waiver of the right to a jury trial was not knowing or intelligent.

Upon his initial appeal, the Louisiana Fifth Circuit noted that the record was insufficient to determine if Howard's jury trial waiver was knowing and intelligent. The court of appeal cited to portions of the record (*i.e.*, minute entry dated June 22, 2009 and transcript excerpts

for that day as well as the day of trial, June 24, 2009), which did not suffice to "satisfactorily show that Howard was fully informed of his right to a jury trial by either the court or by his attorney, or that the waiver was knowingly and intelligently made."[13]  Upon remand, the trial court held an evidentiary hearing and considered the testimony of both Howard and trial counsel, Jake Lemmon. The trial court concluded that the jury trial waiver was knowing and intelligent.

On his second appeal, the Louisiana Fifth Circuit considered and rejected Howard's claim that the jury waiver was invalid.  The appellate court found that the jury waiver was made knowingly, intelligently and persistently.  The court reasoned:

> In his first allegation of error in this second appeal defendant argues that, on remand, the trial judge erred by finding that the jury waiver was made knowingly and intelligently.
>
> During the evidentiary hearing held on remand, defendant testified that during the course of the trial, he met with his trial attorney, Mr. Lemmon, and that Mr. Lemmon told him that it was probably a bad idea to have a judge trial given his history. Defendant further testified that he (defendant) asked for a judge trial and that it was his idea to do so. Defendant testified that Mr. Lemmon did not discuss with him the voir dire process of selecting a jury, the qualifications of a juror, or the number of individuals on a jury panel. He asserted that Mr. Lemmon did not discuss with him the number of jurors that would be seated at his trial or the number of jurors it would require to obtain a verdict. Defendant also asserted that Mr. Lemmon did not discuss with him jury challenges or the consequences of a jury failing to reach a verdict. He explained that Mr. Lemmon

---

[13] *State v. Howard*, 37 So.3d at 1105.  Following Louisiana Supreme Court precedent in *State v. Nanlal*, 701 So.2d 963 (La. 1997), the court of appeal remanded the case to the trial court for an evidentiary hearing as to whether the defendant validly waived the right to a jury trial.

told him it was his (defendant's) choice as to whether he should be tried by a jury or the judge, but that it was "a bad idea just going with one man, the judge." When asked whether he was aware that he had the right to a jury trial, defendant replied, "I just thought it was better with the judge, I just went with my own feelings." Defendant stated that on the morning of trial, the judge said that he was going to have a bench trial as "That's what you wanted from the get-go." He said the judge did not explain to him that he had a constitutional right to a jury trial. Defendant did not recall the commissioner informing him of his right to a jury trial when he was arraigned, or the commissioner telling him that he had 15 days from the date of the arraignment to make the selection. Defendant testified that he had no legal training.

On cross-examination, defendant admitted that he told Mr. Lemmon he wanted a judge trial instead of a jury trial. Defendant also admitted that he understood that it was his choice as to whether to have a judge trial or a jury trial. He understood that he could have had a jury trial if he had wanted one. Defendant told Mr. Lemmon he wanted a judge trial, even though Mr. Lemmon said it was a bad idea, and that it was his right to do that.

The trial judge then asked defendant some questions. Defendant testified that he was in the graduate program at Southern University when this incident occurred, and was nearing completion of his master's degree in public administration. He said he was proceeding successfully in that program. Defendant asserted that he was a drug addiction counselor at the Baton Rouge Detox Center. He admitted that he had two prior convictions, and that he had asked the trial judge on a number of occasions for a bench trial.

Defendant also recalled that the trial judge twice refused his request for a bench trial, prior to granting the request on the day of trial, and that his request was against defense counsel's advice.

Defendant testified that the trial judge did not tell him he had a constitutional right to a jury trial. He admitted that he knew what a jury and a judge were, and he understood that he could have a jury trial if he wanted a jury trial. Instead, defendant chose not to have a jury trial, but to have a judge trial.

Mr. Lemmon testified that he remembered this case and recalled the trial preparations he engaged in, and the discussions he had with defendant. He stated that from the very beginning, defendant wanted to waive a jury trial and

13

be tried by the court alone. Mr. Lemmon explained that they had discussed that topic at length on multiple occasions in court and in meetings at the public defenders' office. He thought he had to file a special motion asking the court to reconsider its position on allowing defendant to waive the jury and be tried by the court alone.

Mr. Lemmon's position as a defense attorney was he would never elect to try a case before a judge when a defendant has a prior criminal history. Nevertheless, Mr. Lemmon testified that he prepared for both a jury and a judge trial hoping defendant would change his mind. He remembered the issue was addressed a lot in court because it was a serious point of contention in his eyes.

On cross-examination, Mr. Lemmon testified that he advised defendant he had a right to a jury trial. He believed that defendant knowingly and intelligently waived his right to a jury trial. Mr. Lemmon stated that defendant adamantly wanted a judge trial. He pleaded with defendant and his family from the very beginning when he first met defendant not to take a bench trial. Mr. Lemmon was relieved when the trial judge initially denied defendant the ability to have a judge trial because he thought that was his first successful step in defending defendant.  Mr. Lemmon stated that he indicated on the day of trial in front of the judge that it was against his advice that defendant was electing to have a judge trial.

After hearing arguments of counsel, the trial judge found that defendant knowingly, intelligently, and persistently waived his right to a jury trial. The trial judge noted that defendant knew before trial that there was the element of having to announce that he lied, that his sister's testimony would be less than truthful, (if not damaging to him,) and that defendant's strategy was that he was to be the sole voice of reason when he testified and that the trial judge would understand. The trial judge commented that defendant's attorney knew otherwise and counseled him against taking the witness stand in front of a judge since defendant had two prior convictions and a disclaimer of the truthfulness of the statement he gave to the police.

The trial judge further stated that the following factors led him to conclude that defendant knowingly and intelligently waived his right to a jury trial, and that Mr. Lemmon did nothing that would have impacted the trial judge's decision to find defendant guilty beyond a reasonable doubt: defendant's intelligent waiver of the jury trial, his desire to conduct his own trial strategy, the fact that

14

defendant was wise as to life and to the ways of the criminal justice system by virtue of two prior convictions, his education evidenced by the fact that he was near the completion of a master's degree, and defendant's "curiously" having attained the level of being an addiction counselor.

Although the right to a jury trial may be waived in non-capital cases, it must be "knowingly and intelligently" waived. LSA–C.Cr.P. art. 780 A. Waiver of this right is never presumed. *State v. McCarroll*, 337 So.2d 475, 480 (La.1976); *State v. Zeringue*, 03–697 (La. App. 5 Cir. 11/25/03), 862 So.2d 186, 193, *writ denied*, 03–3523 (La. 4/23/04), 870 So.2d 298. Although it remains the preferred method for the district court to advise a defendant of the right to a jury trial in open court before obtaining a waiver, that practice is not statutorily required. *State v. Pierre*, 02–2665 (La. 3/28/03), 842 So.2d 321 (per curiam); *State v. Lokey*, 04–616 (La. App. 5 Cir. 11/30/04), 889 So.2d 1151, 1154, *writ denied*, 04–3195 (La. 5/6/05), 901 So.2d 1093. It is likewise preferred, but not necessary, for the defendant to waive the right to a jury trial personally. *Id*. Counsel may waive the right on the defendant's behalf, provided the defendant's decision to do so was made knowingly and intelligently. *Id*.

We find that defendant was advised he had the right to a jury trial, and that he knowingly and intelligently waived that right. Defense counsel testified that he advised defendant he had the right to a jury trial, but that defendant adamantly wanted a judge trial. Defendant admitted at the hearing that he understood that it was his choice as to whether to have a judge trial or a jury trial. He also admitted that he knew what a jury and a judge were, and that he asked for a judge trial. Accordingly, the trial judge did not err in allowing defendant to waive his right to trial by jury. Compare *State v. Quest*, 00–205 (La. App. 5 Cir. 10/18/00), 772 So.2d 772, 784, *writ denied*, 00–3137 (La.11/2/01), 800 So.2d 866. This allegation lacks merit.[14]

The Louisiana Supreme Court denied his related writ application without additional comment.

The right to a jury trial in a criminal case is a fundamental constitutional right. *Duncan v. Louisiana*, 391 U.S. 145,157–58 (1968). A defendant may waive that right, but the waiver

_____

[14] *State v. Howard*, 10-869 (La. App 5th Cir. 5/24/11), 66 So.3d 1160, 1163-65.

must be express and intelligently made. *See Singer v. United States*, 380 U.S. 24, 34 (1965).  The determination whether "there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942). The waiver of a constitutional right cannot be presumed from a silent record. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

On *habeas* review, a state court's determination that a petitioner's jury trial waiver was valid is a mixed question of law and fact.  *Pierre v. Leger*, 495 Fed. Appx. 403, 405 (5th Cir. 2012); *Pignataro v. Poole*, 381 Fed. Appx. 46, 50 (2d Cir.2010), *cert. denied*, 131 S.Ct. 1006 (2011); *Lott v. Coyle*, 261 F.3d 594, 610 (6th Cir.2001); *United States v. Watts*, 45 Fed. Appx. 323, 2002 WL 1868131, at *2 (5th Cir.2002).  As such, the state court's determination must be upheld unless the state court's decision was contrary to or involved an unreasonable application of clearly established Supreme Court precedent.  *Pierre*, 495 Fed. Appx. at 405.

The record in this case reflects a knowing and intelligent waiver by Howard.  In fact, the trial court described the waiver as not only knowing and intelligent, but also persistent, because Howard refused to heed counsel's advice against waiver and repeatedly insisted instead on a bench trial.[15]  Howard's testimony during the evidentiary hearing was clear that defense counsel explained to him and he understood that he had the right to a jury trial, as well as the sole discretion to waive that right and opt for a judge trial.  He was keenly aware that

---

[15] The record reflects that Howard requested a bench trial on three separate occasions. State Rec., Vol. 3 of 5 (court minute entries - 3/31/08, 7/28/08, 6/22/09).

defense counsel disagreed with his decision to proceed with a bench trial and strongly recommended against doing so. According to Howard, Mr. Lemmon said "it was a bad idea." Although Mr. Lemmon could not recall any specific colloquy between the trial court or himself and Howard with regard to the waiver, he testified they discussed Howard's desire for a bench trial at length on multiple occasions both in court and in private meetings. Each time he asked Howard to reconsider and hoped he would change his mind. Because Howard flatly refused to heed his advice and persisted in his desire for a bench trial, Mr. Lemmon felt compelled to put it on the record. On the morning of trial , he expressly informed the court for the record that it was against his advice, but his client was adamant about waiving his right to a jury trial and having the case tried by a judge. The trial court asked Howard directly to acknowledge that his attorney advised him to be tried before a jury rather than a judge and that it was still his decision not to follow that advice and to request a bench trial.[16] Once satisfied that this was indeed Howard's understanding and desire, the trial judge proceeded with the bench trial. As Howard candidly explained at the evidentiary hearing, he rejected counsel's advice and simply went with his own feelings that it was better with the judge. Howard has never suggested, and the record evidence does not indicate, that he was unable to understand the advice of counsel.

---

[16] State Rec., Vol. 3 of 5, Trial Transcript, pp. 5-6.

17

It is therefore clear from the record that Howard was informed of his constitutional right to a jury and affirmatively chose to waive that right.  Howard fails to persuade the Court that, in the absence of a more thorough colloquy, his waiver was invalid.  On *habeas* review, the absence of any colloquy between a defendant and the trial judge regarding the constitutional right to a jury trial "does not compel the finding that [the petitioner's] waiver was not knowing and intelligent." *See Pierre*, 495 Fed. Appx. at 410.  While the record must demonstrate an intelligent and competent waiver, Supreme Court precedent does not mandate "fact-specific constitutional minima for a valid jury waiver" or "a set colloquy before a jury waiver can be accepted."  *Id.* (quoting *Scott v. Cain*, 364 Fed. Appx. 850, 855 (5th Cir. 2010)).  Indeed, guided by these principles, the Fifth Circuit in *Pierre* held the mere absence of a colloquy between the defendant and trial court regarding the constitutional right to a jury trial did not compel a finding that the waiver was not knowing and intelligent.  *Pierre*, 495 Fed. Appx. at 410-11.

The state court's factual findings are presumed correct absent the requisite clear and convincing evidence to rebut that presumption. 28 U.S.C. § 2254(e)(1).  Further, the state court's determination was not contrary to or an unreasonable application of clearly established federal law.  Accordingly, Howard is not entitled to federal *habeas* relief on this claim.

B. *Disclosure of confidential informant's identity and right to confrontation*

In these related claims, Howard asserts that the failure to disclose the confidential

informant's identity deprived him of the right to confrontation and a fair trial.  Howard contends the trial court should have required the State to disclose the identity of the confidential informant, who purchased crack cocaine as part of an earlier controlled transaction on the premises.  The information gleaned from the transaction involving the confidential informant served as the basis for the search warrant.  Detective Monnerjahn stated in the affidavit in support of the search warrant that the confidential informant told him that he had personally bought crack cocaine in the past from an individual by the name of "Kevin" at the residence in question, and he was able to identify Howard from a photograph as the person who was distributing the crack cocaine from the residence.

The court of appeal rejected Howard's claim that he was entitled to disclosure of the confidential informant's identity, stating:

> As a general rule, an informant's identity is privileged information. *State v. Clark*, 05–61, p. 12 (La. App. 5 Cir. 6/28/05), 909 So.2d 1007, 1014, 1014 n. 18, *writ denied*, 05–2119 (La. 3/17/06), 925 So.2d 538 (citing *State v. Broadway*, 96–2659, p. 19 (La. 10/19/99), 753 So.2d 801, 815, *cert. denied*, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000)). This privilege is founded upon public policy and seeks to further and protect the public interest and law enforcement by encouraging people to supply information to the police by protecting their anonymity. *Clark*, 05–61 at 12, 909 So.2d at 1014–15, 1015 n. 19 (citing *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957)). However, exceptions to this privilege exist. *See* LSA–C.E. art. 514(C). The identity of an informant should be made known to the accused only when his right to prepare his defense outweighs the need for protection of the flow of information. *State v. Smith*, 09–259 (La. App. 5 Cir. 11/24/09), 28 So.3d 1092. The burden is on the defendant to show exceptional circumstances warranting disclosure of the name of a confidential informant. *State v. Smith*, *supra*.

> Here, defendant's theory of the case was that he was not present at the time of

19

the buy, and that he lived in Texas and was only at the apartment for a funeral.[17] The confidential informant's information may have provided the evidence to support the search warrant, however it did not contribute to the crime charged, which was possession of the drugs found at the apartment. Therefore the defense was not entitled to disclosure of the identity of the confidential informant. *State v. Regis*, 09–0806 (La. App. 4 Cir. 11/12/09), 25 So.3d 183, *writ denied* 10–0003 (La. 6/18/10), 38 So.3d 322; *State v. Austin*, 04–993 (La. App. 5 Cir. 3/1/05), 900 So.2d 867, *writ denied* 05–0830 (La.11/28/05), 916 So.2d 143, 916 So.2d 143.

Under both federal and state law, the prosecution is not required to disclose the identity of an informant unless the informant's identity is relevant and helpful to the defense of the accused or is essential to a fair determination of the trial. *Roviaro v. United States*, 353 U.S. 53, 59–63, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *United States v. Edwards*, 133 Fed. Appx. 960, 962 (5th Cir.2005); *State v. Coleman*, 713 So.2d 440 (La.1998).  Here, the state appellate court reasoned that there were no circumstances warranting disclosure of the confidential informant's identity.

Howard has offered nothing to show how the confidential informant's testimony might have helped in his defense.  No request was made for disclosure of the confidential informant's identity.[18]  As the court of appeal noted, the information supplied by the confidential informant

---

[17] The Court notes a factual inconsistency in the text of the opinion regarding Howard's place of residence.  Howard's mother lived in Texas.  Howard maintained and the record supports that his residence was in Baton Rouge.  However, this incorrect factual reference does not alter the reasoning or substance of the legal argument.

[18] This was actually beneficial to Howard.  By not presenting the confidential informant as a witness (or the officers who participated in the controlled transaction), the defense had the opportunity to cast doubt and undermine the reasonableness of the police investigation

to police was used only to secure the search warrant for the premises; it did not provide the basis for Howard's arrest or conviction for possession of the narcotics.  His arrest and conviction was based on the illicit substances and paraphernalia found in the apartment, the direct testimony of the officers and Howard's voluntary admission of guilt, not the identification or information supplied by the confidential informant in connection with the prior controlled buy for which no criminal charges resulted.  In fact, the confidential informant played no role in the State's case-in-chief.  Because the drug transaction with the confidential informant did not form the basis of the charges against Howard in this case, he fails to show how the confidential informant's identity or testimony would have aided his defense at trial.

Howard also implies as part of his claim that the failure to disclose the confidential informant's identity violated his right of confrontation.  To the extent Howard's argument implicates the Confrontation Clause, the claim is also without merit.  The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.  The Sixth Amendment bars out of court statements that are testimonial in nature unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004).  The Confrontation Clause does not, however, "bar the use of

---

of Howard with evidence suggesting he was misidentified as the person distributing narcotics from the residence.  As the record shows, defense counsel also agreed to enter into a stipulation rather than call Detective Modica, an officer involved in the controlled transaction, as a witness on direct examination during presentation of the defense's case.

testimonial statements for purposes other than establishing the truth of the matter asserted." *Id*. at 59 n. 9.

The prosecution presented the testimony of two police detectives: Jason Monnerjahn, who applied for the search warrant, and Sean Cursain, who participated in the execution of the search warrant.  A review of the record shows that the confidential informant was not mentioned by the State on direct examination, but rather by defense counsel on cross-examination.  Defense counsel cross-examined Detective Monnerjahn as to the circumstances surrounding the investigation that led to the application for the search warrant.  In this context, reference was made by defense counsel to the confidential informant in order to provide a factual backdrop for the events at issue.[19]  Upon redirect by the State and follow-up examination by the defense, Detective Monnerjahn was questioned about the confidential informant's identification of the person who sold him the crack cocaine at the premises, as detailed in the search warrant application.[20]

The admission of this testimony regarding information received by police from the confidential informant did not violate the Confrontation Clause because it was not offered for its truth, but rather, for the nonhearsay purpose of explaining the background police surveillance and investigation that culminated in the search of that particular residence.  The

---

[19] State Rec., Vol. 3 of 5, Trial Transcript pp.  31-33.

[20] *Id*. at 41-44.

detective's testimony that the confidential informant was able to identify Howard from a photograph as the individual from whom he obtained crack cocaine at the residence was offered to provide background information regarding the course of the police investigation, and was not offered for its truth, because it did not bear on Howard's possession of the narcotics with which he was charged.

For these reasons, Howard has failed to show that the state court adjudication was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  He is not entitled to federal *habeas* relief on this claim.

C.  *Lawfulness of search under the Fourth Amendment*

To the extent Howard references as part of the above claim that the evidence was the product of an illegal search based on an invalid warrant containing false information supplied by an unreliable confidential informant, the claim is without merit.

Fourth Amendment violations generally are not cognizable on federal *habeas* review. *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone v. Powell*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal *habeas* corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Id*. at 494 (footnotes omitted).  A "full and fair" hearing as contemplated by *Stone* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state

23

court. *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir.1986); *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir.1977).

The United States Court of Appeals for the Fifth Circuit has interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity." *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir.1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir.2002), *cert. denied*, 537 U.S. 1196 (2003). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal *habeas corpus* consideration of that claim whether or not the defendant employs those processes." *Caver*, 577 F.2d at 1192.  It is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone v. Powell* prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful. *Janecka*, 301 F.3d at 320–21. Even if a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the *Stone v. Powell* bar to apply. *Id*. at 320; *Register v. Thaler*, 681 F.3d 623, 628 n. 19 (5th Cir. 2012).

Defense counsel filed a motion to suppress in this case.  However, the record shows that no evidentiary hearing was scheduled on the motion, which was set to be heard on the day of trial.[21]  In accordance with a defense stipulation at trial, the search warrant and application

---

[21] *See* Omnibus motions, including motion to suppress evidence, identification and confession, filed January 31, 2008.  State Rec., Vol. 1 of 5, Motion (R.p. 146); Minute Entry of 3/31/08 (R.p. 145).

24

were admitted into evidence.[22]

Howard neither asserts nor explains how he was denied a full and fair opportunity to litigate the motion to suppress.  Certainly, the mere nondisclosure of the informant's identity in this case did not deny Howard the opportunity to litigate his Fourth Amendment claims in state court.  *See Simpson v. Kreiger*, 565 F.2d 390, 392 (6th Cir. 1977).  Absent any proof by Howard that he was denied a full and fair hearing in state court, a request for federal *habeas* relief on grounds of an alleged violation of the Fourth Amendment is precluded.  *Stone*, 428 U.S. at 494-95; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987).

D.  *Ineffective assistance of counsel*

Howard claims that his attorney's performance was constitutionally deficient and resulted in his conviction and sentence.  He argues counsel was ineffective in the following respects:

> Counsel failed to demonstrate skill and knowledge to render a reliable and adversarial testing process by doing little to upset the states defense against Defendant by stipulating to all evidence against accused.  Also counsel did not impose client's rights that entitle counsel to be effective by his duty to investigate facts, circumstances, and options surrounded and associated with this instant case.  Moreover, counsel was inconsistent in pursing other lines of defense that would have exonerated defendant prior and during trial proceedings.  Finally counsel was unconvinced of defendant's innocence which led him to not putting forth time and effort necessary to mount a good defense.[23]

---

[22] State Rec., Vol. 3 of 5, Trial Transcript, p. 70.

[23] Rec. Doc. 19, p. 11.

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  A petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.  *Strickland*, 466 U.S. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test,  petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998).  However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*; *see also Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).

A petitioner must also demonstrate that counsel's alleged errors prejudiced the defense

26

because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691-92. To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Because the state courts rejected petitioner's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002). As the United States Supreme Court has held, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is, in fact, doubly deferential. *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (citing *Burt v. Titlow*, 134 S.Ct. 10, 13, 187 L.Ed.2d 348 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011)).

The Louisiana Fifth Circuit denied Howard's claim of ineffective assistance of counsel raised on direct appeal as follows:

> In his second allegation of error defendant argues, as he did in his first appeal, that his trial counsel was ineffective because he entered into several stipulations regarding the evidence at trial, and those stipulations prejudiced his ability to refute the evidence against him. Specifically, defendant contends that his trial counsel was ineffective because he employed a poor defense

strategy; stipulated to the lab report and the weights of the drugs; stipulated that men's clothing found in the residence belonged to defendant; and stipulated that items found in a briefcase belonged to defendant. Defendant also contends that his trial counsel was ineffective because he failed to call his sister, Wondra Howard, as a witness at trial.

Mr. Lemmon indicated that he made several stipulations at trial. When asked what the purpose was for those stipulations, Mr. Lemmon responded that it would have been different if there had been a jury trial. Mr. Lemmon explained that the judge had the case for a very long time and was aware of the laboratory analysis. He further explained that most of those stipulations were made in the interest of judicial economy, but that was in conjunction with his defense that defendant was not aware of the drugs, that he did not know of the drugs, and that the drugs were not his.

With respect to the application for the search warrant, Mr. Lemmon was aware that defendant had been named by the confidential informant, however his defense was that he had been living in Texas and was not around the area where the drugs were found. Therefore, regardless of the admissibility, "it would have been the purpose of my entire defense was [sic] to remove Mr. Howard from the residence," and that the defense contended that defendant was only at the residence for a funeral that weekend, and it would have been impossible for defendant to have been selling narcotics prior to the date of his arrest.

Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. *State v. McDonald*, 04–550 (La. App. 5 Cir. 11/16/04), 889 So.2d 1039, 1042, *writ denied*, 04–3088 (La.4/1/05), 897 So.2d 599. A claim of ineffective assistance of counsel must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Dabney*, 05–53 (La. App. 5 Cir. 6/28/05), 908 So.2d 60, 63.

Under the *Strickland* test, the defendant must show: (1) that counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense. *State v. Dabney*, *supra*, citing, *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064. This requires showing that counsel's errors were so serious as to deprive the defendant of a

trial whose result is reliable. *Id*. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Dabney*, 908 So.2d at 63, citing, *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068.

A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *State v. Dabney*, 908 So.2d at 63, quoting *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. at 2065. There is no precise definition of reasonably effective assistance of counsel, so any inquiry into the effectiveness of counsel must be specific to the facts of the case, and must take into consideration the counsel's perspective at the time. *State v. LaCaze*, 99–0584 (La.1/25/02), 824 So.2d 1063, 1078–79, *cert. denied*, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). The Sixth Amendment does not guarantee errorless counsel or counsel judged ineffective by hindsight, but counsel reasonably likely to render effective assistance. *Id*.

As was stated previously, defendant contends that his trial counsel was ineffective for many reasons. First, defendant complains that the defense his counsel presented at trial—that defendant confessed his guilt to police to protect his sister—was a poor one. It is well established that "hindsight is not the proper perspective for judging the competence of counsel's trial decisions. An attorney's level of representation is not determined by whether a particular strategy is successful." *State v. Brooks*, 505 So.2d 714, 724 (La.1987), *cert. denied*, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987), citing *Strickland v. Washington*, *supra*. *See also*, *State v. Johnson*, 08–1156 (La. App. 5 Cir. 4/28/09), 9 So.3d 1084, 1093, *writ denied*, 09–1394 (La.2/26/10), 28 So.3d 268. Counsel's theory of the case was consistent with defendant's own trial testimony. Therefore, defendant cannot now complain that counsel's performance was deficient simply because the strategy was unsuccessful.

Second, concerning the defense's stipulation to Mr. Krone's credentials and report, concerning the nature and amount of the drugs, we do not find that counsel was deficient in so stipulating. Such stipulations are often entered into by counsel in the interest of judicial economy and trial strategy. *See State v. Gordon*, 00–1013 (La. App. 5 Cir. 11/27/01), 803 So.2d 131, 147, *writ denied*,

02–0209 (La. 2/14/03), 836 So.2d 134. In this instance, counsel's stipulations served the ends of judicial economy as well as trial strategy. In agreeing to these stipulations defense counsel commented, "[T]he weight of the cocaine has no bearing on my defense in this matter." The stipulations to Mr. Krone's report did not adversely affect defendant's case. Therefore, defendant did not suffer prejudice as contemplated by *Strickland*.

Regarding defense counsel's stipulation that the articles of men's clothing found in the Helen Street residence belonged to defendant, we do not find that counsel was deficient in entering into this stipulation, or that defendant was prejudiced by it. During his own trial testimony, defendant admitted the clothing found in the apartment belonged to him. He further testified that he put his clothes in a drawer in his nephew's dresser. Defendant's testimony was actually more specific than counsel's stipulation.

Defendant also maintains that his trial counsel entered into a stipulation that all of the items located in the briefcase belonged to defendant. There is no such stipulation in the portion of the record cited by defendant, nor does there appear to be such a stipulation elsewhere in the record. In any case, defendant essentially admitted to ownership of the briefcase during his testimony. When defense counsel asked him, "Any drugs in your briefcase?" defendant responded, "No, sir."

Next, defendant contends that his trial counsel was ineffective because he stipulated to incriminating facts contained in the search warrant, thereby passing on the opportunity to cross-examine Detective Modica, one of the officers who worked with the confidential informant. At the evidentiary hearing, Mr. Lemmon, defendant's trial counsel, testified that he stipulated to the search warrant as part of his trial strategy, since his defense was that defendant was living in Texas and that he was only at the residence that weekend for a funeral, and it would have been impossible for defendant to have been selling narcotics prior to the date of his arrest. Because his defense was that defendant did not know about the drugs and that the drugs did not belong to him, the issues stipulated to were not germane. Further, when asked why he would stipulate to an identification that placed defendant at the scene engaged in criminal activity not before the court, Mr. Lemmon answered that it went to the credibility of the police officers who were alleging that defendant possessed the drugs for which he was convicted, because if the judge had believed defendant's testimony, it would have shown the lack of credibility of the officers who

prepared the search warrant. He also testified that not making the stipulations in question would not have definitely altered the outcome of the trial.

We find that defendant has not overcome the presumption that, under the circumstances, counsel's stipulations might be considered trial strategy. Furthermore, defendant cannot now complain that counsel's performance was deficient simply because the strategy was unsuccessful.

Finally, defendant argues that his trial counsel was ineffective because he failed to call his sister, Wondra Howard, as a witness at trial. Defendant suggests counsel could have questioned Ms. Howard about why defendant was staying at her apartment, and about a friend of hers [who] was sprayed by the police.

A defense counsel's decision to call or not call a witness is a matter of trial strategy and is not per se evidence of ineffective assistance. *State v. Allen*, 06–778, p. 11 (La. App. 5 Cir. 4/24/07), 955 So.2d 742, 751, *writ denied*, 08–2432 (La. 1/30/09), 999 So.2d 754.

At the evidentiary hearing, counsel asked Mr. Lemmon why the individual who was tasered at the residence was not called as a witness, and Mr. Lemmon replied that he believed that that person was the boyfriend or husband of Mr. Howard's sister, whose testimony would have been detrimental to Mr. Howard. Mr. Lemmon testified that he made a decision not to call that person or defendant's sister because they would not have given testimony that would have been beneficial to defendant.

We find that the trial strategy employed by defendant's trial counsel was reasonable under the circumstances, and that counsel was not deficient in failing to call defendant's sister or her husband or boyfriend as witnesses at trial. Defendant has failed to show under the *Strickland* test that counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms, or that the deficient performance prejudiced the defense. This allegation lacks merit.[24]

Howard faults defense counsel for failing to provide a satisfactory defense theory

---

[24] *State v. Howard*, 66 So.3d at 1165-1168.

supported by adequate investigation and presentation of evidence, namely two uncalled

defense witnesses, and instead, stipulating to all of the State's evidence against him.  Howard

argues that counsel should have subpoenaed his sister, Wondra Howard, and her boyfriend,

Edward Veal, to testify at trial and explain why Howard was residing at the apartment, why

Veal was present in the residence, and why police had to use pepper spray on him.[25]

Presumably, their testimony would have supported Howard's defense theory that the drugs

belonged to his sister, contrary to his statements to police at the time of his arrest.

In addressing claims regarding uncalled witnesses, the United States Fifth Circuit Court

of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas
> review because the presentation of witnesses is generally a matter of trial
> strategy and speculation about what witnesses would have said on the stand is
> too uncertain. For this reason, we require petitioners making claims of
> ineffective assistance based on counsel's failure to call a witness to demonstrate
> prejudice by naming the witness, demonstrating that the witness was available
> to testify and would have done so, setting out the content of the witness's
> proposed testimony, and showing that the testimony would have been favorable
> to a particular defense. This requirement applies to both uncalled lay and expert
> witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir.2010) (citations, quotation marks, and brackets

omitted); *see also Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir.2009).  Guided by these

---

[25] Howard's federal *habeas* application poorly details supporting factual grounds for
this claim, alleging only generally that there were options not explored by counsel and he
should have pursued unspecified "other" lines of defense.  Therefore, the Court considers the
factual argument made in support of the claim on direct appeal.  *See* State Rec., Vol. 4 of 5
(Appellant Brief), p. 12.

principles, the Court concludes Howard has not made the requisite showing to demonstrate the state court's decision was unreasonable.

Here, the record shows that defense counsel met with Howard and his sister to investigate the prospect of calling her and Veal as witnesses for the defense. At the evidentiary hearing, Mr. Lemmon testified that he discussed the witnesses' prospective testimony at length with Mr. Howard and his sister. He testified that he was aware of Veal's close relationship with Ms. Howard. He also testified he was aware that Howard's sister now wanted to accept responsibility for the drugs, but while this factored into his negotiation and discussions with the State, he nevertheless had strong reservations about presenting either one of the individuals as defense witnesses. He revealed that the discussions highlighted some critical factual discrepancies between the testimony of Howard and his sister, particularly regarding the timing of her pregnancy, that contradicted his defense that he lied and claimed ownership of the drugs to protect his pregnant sister. Mr. Lemmon frankly believed the witnesses would offer testimony that was untruthful. He candidly stated that he had an ethical obligation, "that if a witness is going to testify falsely that I can't call him. And I made that determination as to both of those witnesses."[26] Based on the detailed conversations, he concluded their testimony would not be beneficial to the defense.[27] In short, counsel believed the witnesses would offer

---

[26] State Rec., Vol. 4 of 5, Transcript of evidentiary hearing, p. 43.

[27] *Id*. at 38.

unfavorable, if not damaging, testimony for the defense.

Under the circumstances, as the state court reasonably determined, Howard fails to show that counsel's performance at trial was deficient for failure to call the two witnesses. Mr. Lemmon considered both witnesses suggested by Howard, carefully weighed the impact their testimony would have at trial, ultimately rejected their proposed testimony as untruthful and detrimental to the defense, and declined to subpoena them for trial. The record demonstrates that counsel's decision not to call the witnesses at trial was an objectively reasonable and professionally competent trial strategy. Furthermore, Howard fails to establish prejudice because he cannot demonstrate there was a reasonable probability that the purported testimony of the witnesses would have altered the outcome of the bench trial. Any testimony by his sister accepting responsibility, even if theoretically beneficial to his defense, was also highly biased, suspect and likely to have been rejected as unreliable and not credible. Nor has Howard provided the substance of Veal's purported testimony, which cannot be shown to have been beneficial to his defense.

As part of his allegation regarding the improper stipulations, Howard also suggests that defense counsel should have called the confidential informant at trial in order to challenge the information he provided to police that was contained in the search warrant application. Howard asserts that the confidential informant's presence at trial was crucial because "the confidential informant did more than identify Howard, the confidential informant negotiated a deal, the confidential informant is the one who entered the house, this constitutes more than

34

an identification."[28] For the reasons previously stated, however, Howard was not entitled to disclosure of the confidential informant's identity.  Furthermore, as noted above, complaints of uncalled witnesses are not favored where, as here, the presentation of testimony is a matter of tactics and trial strategy by defense counsel and the allegations of the content of a witness' testimony are entirely speculative.  Howard has not shown based on his subjective, self-serving allegations that the confidential informant's testimony would have been favorable to the defense.  For these reasons, Howard is not entitled to relief on his claim that defense counsel rendered ineffective assistance when he failed to subpoena these witnesses to testify.

Regarding Howard's claim that counsel was ineffective for agreeing to certain stipulations at trial, he likewise fails to show that the state court made an unreasonable determination under *Strickland*. The court of appeal addressed several stipulations made by defense counsel during the bench trial and found that the stipulations were strategic in nature, served the ends of judicial economy and did not adversely affect the outcome of the case.  The stipulations addressed by the appellate court include the lab analyst's credentials and report concerning the nature and amount of the drugs, Howard's ownership of items of clothing found in the bedroom dresser as well as a briefcase and its contents, and finally, the search warrant application in its entirety.

At the evidentiary hearing, defense counsel explained that the stipulations were

---

[28] Rec. Doc. 19.

strategic in nature.  He also presented reasoned and legitimate explanations for his tactical decisions.  He noted his agreement to the stipulations in this bench trial furthered judicial economy, particularly because the matters at issue were not germane to the defense and the stipulations would not adversely impact the defense of the case.

As a general matter, a trial counsel's decision to enter into a stipulation involves a matter of trial strategy, and disagreement about trial tactics cannot form the basis for a claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 688-89.  Here, the state appellate court acknowledge defense counsel's strategic decision to enter the stipulation as to the lab analyst's qualifications and reported narcotics lab results and forego any challenge to the chain of custody because the nature of the drugs recovered did not in any way impact Howard's defense that he had no knowledge of the drugs and that they did not belong to him.  Howard fails to show that it was unsound trial strategy on the part of trial counsel to enter into this stipulation or that doing so had any impact whatsoever on the outcome of the proceedings.

With respect to the clothing and briefcase, no challenge could have been raised because Howard candidly admitted ownership of these items.  Howard testified at trial that the items of men's clothing found in the bedroom belonged to him.  He explained that he placed them in the dresser during his brief stay in town for the funeral.  Thus, the stipulation that the clothes found in the residence belonged to Howard merely reflected what Howard's testimony would later determine.  Similarly, Howard conceded that the briefcase, which contained only papers and not drugs, belonged to him.  The record actually shows that defense counsel did not enter

36

any stipulations with respect to the briefcase or its contents.  The record reflects simply that no objection was made by defense counsel when the State introduced and filed the briefcase and paperwork into evidence.  In any event, this was clearly proper because Howard never disputed ownership of the briefcase or the papers it contained.[29]

As to the search warrant application and affidavit, the stipulation to its contents admittedly allowed into evidence a reference to the confidential informant's identification of Howard and details regarding distribution of narcotics on another occasion that was not before the court.[30]  At the evidentiary hearing, Howard's appointed attorney queried although it was not "a suppressible issue as to the evidence," why defense counsel did not file a motion challenging the objectionable reference contained in the application and instead agreed by stipulation to the introduction of the document at trial.  Defense counsel explained that he stipulated to the accuracy of the search warrant application because it was the defense's position that Howard was not at the residence at the time alleged in the search warrant application and simply could not have been involved in any distribution of narcotics.  Furthermore, he believed that the application was damaging to the credibility of the police officers who testified at trial, because the evidence and testimony presented by the defense (*i.e.*, that it was impossible for Howard to have sold narcotics when he resided in Baton Rouge

---

[29] State Rec., Vol. 3 of 5, Trial Transcript, p. 24.

[30] State Rec., Vol. 2 of 5, State's Exhibit 6.

37

and only came to town for the funeral), directly contradicted the officers' account of their investigation.[31] Defense counsel offered plausible reasons for entering the stipulation. As the state appellate court held, an attorney's stipulations fall squarely within the ambit of trial strategy and do not imply deficient performance simply because the strategy ultimately proves unsuccessful.

Moreover, Howard's claim fails on the prejudice prong alone. He cannot establish prejudice absent showing there is a reasonable probability that, but for counsel's stipulation allowing the search warrant application into evidence, the result of the proceeding would have been different. As Howard candidly admitted at trial, he knowingly and voluntarily confessed at the scene that he lived at the residence with his sister, the drugs and associated paraphernalia belonged to him and that he sold narcotics. He readily gave a detailed recorded statement to this effect. He has since changed his story and denies knowledge and ownership of the narcotics. Despite his claims now that he lied to police and admitted his guilt only to protect his sister, the trial judge found his assertions unbelievable. No prejudice resulted from defense counsel entering a stipulation to the search warrant application. The trial court rendered the guilty verdict based on other ample evidence of record. Given Howard's confession, he fails to advance a plausible argument that the result would have been any different without the stipulation and reference contained in the search warrant application.

---

[31] State Rec., Vol. 4 of 5, Transcript of evidentiary hearing, pp. 35-37.

Accordingly, for the reasons expressed, Howard has not demonstrated that the state court's decision rejecting these ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

### RECOMMENDATION

**IT IS RECOMMENDED** that Howard's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).[32]

New Orleans, Louisiana, this 12th day of _____January_____, 2015.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[32] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.